# The Bank of Kentucky *v.* Jones *et al.*

### *Ejectment.*

1. *A deed must be attested by at least one subscribing witness or acknowledged.*—An instrument intended to convey lands is inoperative to transfer the legal title, unless, if the grantor can write, it is attested by at least one subscribing witness, or execution of it is acknowledged by the grantor in the manner prescribed by law.

2. *Unless the plaintiff shows such a deed, or that it once existed, he can not recover.*—On a trial of an action of ejectment a plaintiff who does not exhibit such a title to the land in controversy, or prove that such a deed once existed, is not entitled to recover.

3. *It is error to give a charge not sustained by the evidence.*—Charges given by the court, at the request of the plaintiff, and founded on recitals of facts of which no evidence whatever was submitted to the jury, are erroneous, and will cause a reversal of the judgment.

APPEAL from the Circuit Court of Montgomery.

[Bank of Kentucky v. Jones et al.]

Tried before the Hon. JAMES Q. SMITH.
The facts are contained in the opinion.

SAYRE & GRAVES, for Appellant.—1. Section 1535 Revised Code fixes the mode and manner of executing deeds of conveyance. It is imperative. This is shown by the use of the word " must." That part which signifies the instrument to be written or printed, or that part of it which requires the the name of the contracting party to be signed at the foot, &c., could just as well be disregarded as the portion in reference to attestation. An instrument not attested as provided for in said section will not operate to alienate lands in this State.—1 Ohio, 164; 3 Conn. 35; 3 N. H. 254; 6 Wheat. 577. If this proposition be true, the court should have charged the instrument as to which the witness testified was void.

2. The contents of no instrument was ever proven on such flimsy evidence. The witness does not testify to a single word in the writing except the signature; the balance is his conclusions—such being the evidence, it was the duty of the court to charge upon the legal effect as requested.—33 Ala. 654; 2 Mason, 465; 1 Pet. 600; 16 Ala. 130.

3. The charges asked by plaintiff ought to have been refused, there being no evidence on which to predicate it. As to the construction of registration laws, see 8 Ala. 866; 24 Ala. 37; 22 Ala. 743.

4. Sections 2599 and 1535 of the Revised Code must be construed together; and to ascertain the meaning of the word " signed" we must refer to section 1535. A deed is not signed unless it complies with the provisions of this section.

WATTS & SONS, for appellees.—1. Unless the deed is withheld for some sinister purpose, slight evidence of its existence and loss will authorize its contents to be proven.—1 Brick. Dig. p. 848, § 632; 18 Ala. 359; 9 Port. 39; 3 Ala. 449. The contents of the deed proven by the witness were not too vague and uncertain, when taken in connection with other facts and circumstances, to supply the place of the written instrument.—3 Ala. 449; 8 Ala. 59.

2. Though there was no direct evidence of the fact, circumstances may be admitted to prove, and for the jury to infer, a proper execution of the deed.—15 Ala. 112; 16 Ala. 725; 14 Ala. 803. Proof of handwriting of Bozeman was sufficient.—17 Ala. 714; 15 Ala. 818.

3. The charges given by the court at request of plaintiff

were correct, unless it be clearly shown no such testimony was before the court.—1 Brick. Dig. p. 337, § 2330. They must be construed in reference to the facts in evidence. Nowhere does the bill of exceptions declare it sets forth all the testimony.

MANNING, J.—The suit in this cause was for land. The bill of exceptions in it shows that it sets forth " substantially all the evidence in the case."

The action was brought by appellees, as heirs of one Alfred Jones, deceased ; and the land belonged originally to one Johnston, and was sold by him in December, 1859, to one Bozeman, who went into possession of it. " There was evidence that one Dillahay, in the early part of the year 1860, was in possession of said land, and cultivated it," also, that prior to that a negro, belonging to Alfred Jones, had hauled some old logs on the land, with which Jones built a small house, and that he was in possession of the land early in 1860. He died in March, 1860; and administration of his estate was granted to Dillahay and one Calloway. " There was evidence that Dillahay continued the cultivation of the place during the remainder of the year, . . . and that Dillahay and Calloway, as the administrators of Jones, after his death, cultivated the place for the remainder of the year ; there was evidence that the aforementioned Bozeman had possession of the land in 1861 and 1862, and until he sold and conveyed the land, in 1863, to one Corbin, who took possession ; and that he and those claiming under him have continued in possession." Appellant claimed under title and possession derived from him.

The suit was brought by appellees August 21, 1875, and to show title in them, the testimony of a witness was introduced, who said that at the administrator's sale of Jones'' estate " he thought he bought the land ;" and Calloway testified that the land was in possession of Jones at his death,. and after his death was taken possession of by his administrators ; and that they continued in possession " until sometime in 1861, when the said administrators offered for sale at public outcry what was supposed to be said land, and the land thus offered for sale was bid off by T. R. Carter." But no deed or instrument of any kind was offered, of such sale, or authority shown to sell it, or evidence given that the supposed purchaser ever took possession.

Calloway further testified that " he found among Jones' papers a writing signed by Bozeman, but did not know

whether it was signed by Bozeman's wife or any one else ; . . . could not state whether the deed was attested or acknowledged ; . . . testified that the writing was a conveyance from Bozeman to Jones of the land in controversy ; that he knew Bozeman's handwriting and had seen him write three times ; . . . that the writing was in his possession as administrator until the spring of 1865, when it was destroyed by the Federal troops, with other papers; that he could not remember the numbers of the land set out in said deed, or whether the land was described by numbers, but testified that the description included the lands sued for, and . . . he thought the deed was dated November, 1859," but " he knew nothing further of the contents of the writing." Witness was a farmer.

To maintain the action, plaintiffs had to show legal title in themselves. It has been decided by this court that an instrument intended to convey lands would not be operative to transfer the legal title, unless, if the grantor could write, it was attested by at least one subscribing witness thereto, or execution of it was acknowledged by the grantor in the manner prescribed by law, and before one of the officers authorized to certify to such acknowledgement.—*Hendon v. White*, 52 Ala. 599 (and other cases in mansscript).

In the present cause no deed is exhibited through which such title to the land in controversy could have come to the plaintiffs below, even if they were, which is not proved, heirs-at-law of Alfred Jones ; to whom, it is contended, the land was once conveyed. Nor is there evidence that such a deed ever existed. It does not appear, in fact, that they have a particle of right to the land, legal or equitable. And if a motion had been duly made to that effect, by defendants below, the jury ought to have been instructed to return a verdict for defendants.

The charges given to the jury, at the instance of plaintiffs, and excepted to on behalf of appellants, are founded on recitals of facts, of which no evidence whatever was submitted, according to the bill of exceptions. These charges were consequently erroneously given.

Let the judgment be reversed and the cause be remanded.