Herman GLAZE, a minor who sues by his father and next friend, James Glaze, Plaintiff-Appellant,

v.

Elliott L. RICHARDSON, Secretary of Health, Education and Welfare, Defendant-Appellee.

No. 29212.

United States Court of Appeals, Fifth Circuit.

Feb. 8, 1971.

Harry B. Cohen, Birmingham, Ala., for plaintiff-appellant.

Wayman G. Sherrer, U. S. Atty., J. Richmond Pearson, Asst. U. S. Atty., Birmingham, Ala., for defendant-appellee.

Before RIVES, WISDOM and GODBOLD, Circuit Judges.

GODBOLD, Circuit Judge:

James Glaze claimed Social Security benefits on behalf of his minor adopted son, Herman Glaze. The Secretary denied the claim. The District Court viewed this as a deserving case but found no basis on which relief could be given and reluctantly affirmed the administrative decision.

We must affirm, because formal adoption proceedings did not become final until after the statutory cutoff date of August 1, 1966, and there was no equitable adoption.

James Glaze became 65 on September 25, 1962 and became entitled to old age benefits that month. The final decree of adoption of the child was entered in the Alabama state court in May 1967.

In Craig v. Finch, 425 F.2d 1005 (5th Cir. 1970), we held that for a child to be entitled to benefits under 42 U.S. C. § 402(d) (9) he must have been "legally adopted" within 24 months of the date on which the wage earner became entitled to benefits. Public Law 89–97,

July 30, 1965 provided that the 24-month limitation should not apply in the case of a child adopted before August 1, 1966. Formal adoption of Herman Glaze was not completed until May 1967. While we have some difficulty with the conclusion of Craig v. Finch that "equitable adoption" does not apply to § 402(d) (9), we need not face that problem in this case because under the facts there was no equitable adoption. Alabama recognizes equitable adoption outside its statutory scheme of adoption but only within carefully articulated limits. There must be a contract to adopt, supported by consideration, and sufficient in form that it could be the subject of specific performance in equity. *E. g.,* Robinson v. Robinson, 283 Ala. 257, 215 So.2d 585 (1968); Luker v. Hyde, 253 Ala. 283, 45 So.2d 32 (1950); Rivers v. Rivers, 240 Ala. 648, 200 So. 764 (1941); Marietta v. Faulkner, 220 Ala. 561, 126 So. 635 (1930).

■ Since October 1961 the Glazes have had care and custody of Herman, undertaken at the request of the mother when the infant child was critically ill and she was unable to furnish it with hospital and medical care. From February 1964 to May 1967 formal adoption procedures were being slowly ground through the mills of the courts and the Department of Pensions and Securities of the State of Alabama, complicated and delayed by the fact that the mother of Herman had disappeared and could not be found. But there was no contractual relationship. The written agreement under which the Glazes undertook care and custody of Herman in 1961 reserved to the mother a right of visitation and specifically provided that "this arrangement for the care, custody and control of said minor does not constitute, and must not be deemed to constitute, an adoption or an attempt to adopt said child." We might imply that the mother, by her long absence and disinterest, had waived this provision, but we are unable to infer an enforceable agreement to adopt in the face of an agreement specifically providing the contrary.

Smith v. Secretary, 431 F.2d 1241 (5th Cir. 1970) found an equitable adoption had occurred, under the standards of Texas law, which also requires a "contract to adopt." But that case rests on evidence which "clearly verified" the existence of an agreement between the claimants and the mother that the claimants could adopt the children. In that case we distinguished the situation where there is, as there is here, evidence showing the absence of an agreement. This case is closer to Hayes v. Secretary, 413 F.2d 997, 998 (5th Cir. 1969), in which the natural parents explicitly withheld consent for adoption.

If there is relief for the appellant, and others similarly situated, it must come through the Congress.

Affirmed.