140 So. 547

## CENTRAL OF GEORGIA RY. CO. v. MOTHERWELL.

### 6 Div. 978.

Supreme Court of Alabama.

March 10, 1932.

Rehearing Denied April 7, 1932.

Nesbit & Sadler, of Birmingham, for appellant.

Altman & Koenig, of Birmingham, for appellee.

**BOULDIN, J.**

The action is for personal injuries. The case went to the jury on count 3 of the complaint, charging negligence after discovery of peril. The plea was in short by consent, with leave to give in evidence any matter of defense, etc.

Count 3, in substance, charges that plaintiff, while crossing the railroad track of defendant at or near the intersection of Twenty-Third avenue and Twenty-Seventh street North, in Birmingham, was put in peril by an approaching freight train of defendant, that the trainmen saw his peril, and, after the discovery of his peril, so negligently operated the train as to run upon the plaintiff and injure him.

Plaintiff's left foot was crushed resulting in the amputation of his leg below the knee.

The railway track runs on and along Twenty-Third avenue, east and west, Twenty-Seventh street runs north and south; the train was moving east. The accident occurred at night, probably 11:30 or later.

The parties are at utter variance in their versions of the occurrence.

Plaintiff testifies he was walking south on the west side of Twenty-Seventh street when he reached Twenty-Third avenue; that here he contemplated crossing both streets at the intersection; that, accordingly, on reaching the railway track, he turned east across Twenty-Seventh street, walked along the north side of the track and on the crossties outside the north rail some 25 to 30 feet, then turned south, stepped onto the track some two steps, when suddenly he discovered the locomotive bearing down on him so near that he could not fully extricate himself and his left foot was caught and crushed.

Defendant's version is that plaintiff was not on the street crossing, nor was he crossing the track. The evidence on defendant's behalf is that plaintiff was first discovered by the brakeman acting as flagman and lookout, riding on the pilot of the engine; that plaintiff was lying on the ground along the north side of the track at a point 40 to 50 feet east of the crossing, was lying face down, head toward the west, with left foot upon the north rail; that immediately the lookout gave the engineer the "washout" signal, a signal for an emergency stop; that the engineer responded at once, using all the means at hand, and with well-equipped engine, to bring the train to a stop, but, despite preventive effort, the engine ran over plaintiff's foot. The evidence of the trainmen is corroborated as to the location by several other witnesses.

In dealing with the affirmative charge requested by defendant, other tendencies of the evidence are to be noted. Such evidence

tends to show this was a heavy freight engine drawing 28 cars; that the train came to a full stop at Twenty-Sixth street crossing; that when it reached Twenty-Seventh street its speed was some 12 miles per hour; that it had a good headlight, the engine was working steam and the bell was ringing; that not only the lookout on the pilot, but the engineer and fireman were keeping a lookout as they approached the crossing. If it be true that plaintiff was in the position and moving as he claims, it would be within the province of the jury to say whether in fact his position and movements were seen and known to the trainmen.

Admittedly no alarm signal was given, and some testimony, negative in character, went to the effect that no bell was ringing. Defendant insists the enginemen had a right to assume the plaintiff knew of the approach of the train, or that he would exercise his senses and keep out of the wake of a passing train, that his movement, keeping on the north side of the track, taking his version of it, was such as to indicate he was aware of the train's approach.

Conceding there was no occasion to anticipate he would suddenly turn onto the track, some evidence tends to show he was in a position of peril while walking so near the track with his back toward the train.

If seen in this position, taking no steps to conserve his own safety until his danger was becoming imminent, it cannot be said as matter of law there was no duty to give him warning.

Stepping out of the wake of the train required but a moment. A signal or a call from the lookout, even as he turned onto the track, might have saved him, if his version be true.

We conclude the question of negligence after discovery of peril was one for the jury.

But, by the same rules of law, the question of plaintiff's concurring contributory negligence was also a question for the jury. This issue was presented by the pleadings and the evidence.

Plaintiff, after stating he was walking south on Twenty-Seventh street, testified on cross-examination: "I was on this occasion walking on the right-hand side, away over on the right-hand side. And I stayed over on the right-hand side until I got right at the railroad. By that I mean to the cross ties, and I walked up the side of the railroad. Yes, Sir, I looked for the train, and didn't see no train. Answering your question, 'Was there anything to obstruct your view after you got close to the track, anything to your right,' the light from the furnace. The furnace was not behind me. I looked to my right to see if any trains was coming and I didn't see any. As to when I looked to my right, which would be in a westerly direction, I hadn't looked to my right then. I did not look to my right before I went on the railroad track. Yes, Sir, I looked to my left, which would be in an easterly direction, and I didn't see any train. The train that struck me was coming from a westerly direction—from the west going east."

Again, plaintiff said: "After I walked along the railroad track in an easterly direction, I then turned to go across the railroad track. I was looking east and I felt the vibration and looked west, and it hit me as I turned to look. And up to that moment I hadn't seen any train at all, and didn't hear it. I did not know the train was coming."

Plaintiff's further evidence tended to show that at that moment the flare of a furnace, a block away in an easterly direction, obscured any sheen of light cast by the headlight of the engine on the track at the crossing.

Clearly it was for the jury, in weighing the above-quoted evidence, to find whether plaintiff looked to the right, and, if so, whether he saw the approaching train, despite his statement that he did not, and whether, after such discovery, he took his chances on crossing over the track before it reached that point.

Apart from the question of looking to the right, surely the noise of a heavy freight train at night, working steam, with ringing bell, could hardly run right up on a man, with presumed normal sense of hearing, without its discovery in time to keep out of its way.

Plaintiff's given charge No. 4 excludes plaintiff's contributory negligence after discovery of his own peril, and predicates an absolute right of recovery upon negligence of the trainmen after discovery of peril.

Plaintiff argues the issue of plaintiff's subsequent contributory negligence was not actually raised. The cross-examination of plaintiff was directly pertinent to that issue, and admittedly it was within the pleadings. True, the trial court in his oral charge omitted any reference to such issue. But we know of no rule which required defendant to request an instruction on the subject, or to call attention to the matter, in the face of an instruction given for plaintiff in effect excluding such question from the jury.

Given charge 4 is also so framed as to submit to the jury the question of negligence after discovery of peril under either version as to the location and manner of the accident. The complaint expressly charges an injury received "while crossing" the track. The complaint does not present any issue of negligence after discovery of plaintiff's foot, a "part of his body," on the track at a point

east of the crossing where plaintiff was lying on the ground. Charge 4 is, therefore, erroneous in submitting such issue to the jury. Thomas v. Carter, 218 Ala. 55, 62, 117 So. 634, and cases there cited.

For the error in giving charge 4, the judgment is reversed.

Reversed and remanded.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.